1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10   MICHAEL MURPHY,                    CASE NO. 12-CV-0340 MMA BGS
11                        Plaintiff,    **ORDER GRANTING
                                        DEFENDANTS TEAMSTERS
12                                      UNION LOCAL 542 AND COSTCO
                                        WHOLESALE CORPORATION'S
13        vs.                           UNOPPOSED MOTIONS FOR
                                        SUMMARY JUDGMENT**
14
15                                      [Doc. Nos. 38, 39]
16   TEAMSTERS UNION LOCAL 542;
     COSTCO WHOLESALE
17   CORPORATION; ET AL.
18                        Defendant.
19
20        On February 8, 2012, Plaintiff Michael Murphy filed this action against

21   Defendants Teamsters Union Local 542 ("Local 542") and Costco Wholesale

22   Corporation ("Costco"), alleging breach of the duty of fair representation, wrongful

23   discharge, age discrimination in violation of the California Fair Employment and

24   Housing Act, and defamation.  Defendants Local 542 and Costco move for summary

25   judgment in their favor or, in the alternative, for partial summary judgment.

26   Plaintiff, who is now proceeding *pro se*, did not file an opposition to either motion.

27        For the following reasons, the Court **GRANTS** Defendants' motions for

28   summary judgment in their entirety.

## I.      FACTUAL BACKGROUND

This action arises out of events involving a forklift accident which took place on July 10, 2011, in a Costco warehouse in Carlsbad, California.[1]  Pltf. 111:4-7[2].

Plaintiff Michael Murphy is a 55-year-old forklift driver.  Pltf. 10:16-17. Prior to the incident at issue, Plaintiff had been an employee of Costco for over 25 years and a member of the union known as Local 542.  Pltf. 29:21-23; Complaint ¶ 19.  Over the course of his employment, Plaintiff achieved the top pay rate for hourly non-exempt employees in accordance with Costco policy, which calculates pay rate exclusively according to the total number of hours worked.  Exh. 2, pg.87.[3] Age, performance, and hire date are not expressly considered.  Bernardy Decl. for Costco ¶ 2.

On July 9, 2011, the evening before the forklift accident, Plaintiff consumed at least 3 drinks prior to going to sleep at 9:00pm.[4]  Pltf. 240:4-9;[5] Exh. 6, pg.97; Pltf. 111:11-14.  He awoke at 3:30 am and clocked in for his shift at Costco at 5:00 am.  Pltf. 111:15-16; Pltf. 111:8-10.

At approximately 7:00 am on July 10, 2011, Plaintiff was operating a forklift used to shelve a pallet of shrink-wrapped mats.[6]  Pltf. 126:13-16.  In the process of shelving the pallet, the shrink wrap caught on one of the protrusions of the "steel."[7] Pltf. 126:13-25.  This caused the pallet to tip to one side, and for one of the mats on

---

[1]The facts recited herein are not reasonably in dispute, unless otherwise noted.

[2]Refers to Plaintiff Murphy's deposition as presented in Defendant Costco's Exhibit 1, unless otherwise noted.

[3]Exhibit numbers refer to Defendant Costco's exhibits, unless otherwise noted.

[4]Mr. Murphy consumed two "7&7s" and at least one beer.

[5]This particular page of Mr. Murphy's deposition can only be found in Exhibit 12 provided by Defendant Local 542.

[6]A "pallet" is a "wooden frame upon which merchandise is placed which can be lifted and moved by a forklift." Wilson Decl. for Costco ¶ 2.  "Shrink wrap" refers to plastic wrap which is used to bind merchandise together to facilitate transport by forklift.  Martinez Decl. for Costco ¶ 2.

[7]"Steel" refers to the steel shelving units which hold pallets. Martinez Decl. for Costco ¶ 2.

the pallet to fall to the floor.  Martinez Decl. for Costco ¶ 3; Pltf. 133:2-15.  Plaintiff attempted to remedy the problem by cutting the shrink wrap; this resulted in the rest of the mats falling to the floor.  Pltf. 127:2-7.  While Plaintiff was rewrapping the mats in shrink wrap, two Costco managers–Ivan Martinez and Darryl Wilson–arrived on the scene and asked Plaintiff what had happened.  Wilson Decl. for Costco ¶ 3; Martinez Decl. for Costco ¶ 4.  Plaintiff responded that he was restocking the pallet.  *Id.*  There was no damage to personnel, shelving, or property as a result of the forklift accident.  Pltf. 127:5-7.

Article XXVI(f) of the Collective Bargaining Agreement ("CBA") mandates that an employee involved in a "serious forklift accident" be subjected to a drug and alcohol test.[8]  Exh. 2, pg.86.  The CBA was jointly approved by Costco and Local 542.  Bernardy Decl. for Costco ¶ 4; West Decl. for Local 542 ¶ 2.  Managers Wilson and Martinez agreed that the incident involving Plaintiff was a "serious forklift accident," because merchandise from the pallet fell onto the ground, and because Plaintiff was at least partly responsible for causing the incident.  Wilson Decl. for Costco ¶ 4; Martinez Decl. for Costco ¶ 5.  This interpretation of "serious forklift accident" was corroborated by another manager, Charles Bernardy, who trains Costco managers regarding when to send employees for drug testing.  Bernardy Decl. for Costco ¶ 5.  As a practical matter, Costco has consistently interpreted Article XXVI(f) by sending employees for drug testing under similar circumstances.  West Decl. for Costco ¶ 7.  Manager Wilson thus informed Plaintiff that he was going to have a drug test.  Pltf. 141:7-10.

Martinez then drove Plaintiff to the U.S. HealthWorks testing facility in Kearny Mesa, California.  Pltf. 146:15-18; Martinez Decl. for Costco ¶ 7.  U.S.

---

[8]Article XXVI(f) of the CBA states: "Post Accident Testing: When, after investigation by Management at the scene, an employee's performance cannot be conclusively discounted as a contributing factor for a serious forklift accident or an accident which causes injury or damage to individuals, property or equipment, the employee will be required to submit to drug and alcohol screening test..."  Exh. 2, pg.86.

12-CV-0340

1   HealthWorks is a drug-testing facility that is wholly independent from Costco.

2   Bernardy Decl. for Costco ¶ 6.

3       While waiting in the U.S. HealthWorks facility to have his blood alcohol

4   content ("BAC") measured by breathalyzer, Plaintiff saw a technician, Ms. Teresa

5   Zimmerman, shake the breathalyzer while saying "no, no, no," and "dammit."[9]  Pltf.

6   153:19-23.  This was denied, however, by both Ms. Zimmerman and by Martinez.

7   Exh. 9, pg.115:5-8; Martinez Decl. for Costco ¶ 8.  The other two individuals

8   present in the waiting room remain unidentified as of the date Defendants' motions

9   were filed.  Pltf. 154:22-24.

10      When Ms. Zimmerman administered the breathalyzer on Plaintiff, she ran two

11   tests, at 9:02 am and at 9:19 am.  The first test produced a blood alcohol reading of

12   0.092; the second reading was 0.093.  Exh. 5, pg.95.  Plaintiff signed the results of

13   the breathalyzer tests to confirm that they were accurately recorded, and Zimmerman

14   signed the results to confirm that she was qualified to administer the breathalyzer

15   and had done so in accordance with U.S. Healthworks policy.  Exh. 5, pg.95.  The

16   State of California deems a person with a BAC of 0.08 to be legally intoxicated for

17   operating a vehicle.  Cal. Veh. Code § 23152(b).

18      Upon receiving the results of his breathalyzer tests, Plaintiff asked Martinez

19   for a blood test to re-measure his BAC.  Martinez denied this request.  Pltf. 153:11-

20   13.  Plaintiff also asked Martinez to drive him somewhere else to get another breath

21   test; this request was also denied.  Pltf. 153:14-16.

22      When the results of the breathalyzer tests were shown to Costco management,

23   Plaintiff was terminated from his employment immediately.  Pltf. 203:16-19.

24   Termination was initiated by Charles Bernardy, who sought and acquired approval

25   for Plaintiff's termination from Costco's Vice President Mario Omoss, based on

26   Major Offense #9 of the CBA, and based on Costco's Drug and Alcohol-Free

27

28      [9]Ms. Zimmerman is now known as Ms. Langley, as per her deposition.  Exh. 9, pp.102-16.

Workplace policy.  Bernardy Decl. for Costco ¶ 9, 10.

Major Offense #9 under the CBA involves "bringing liquor, narcotics or dangerous drugs into the Company premises or consuming liquor or using narcotics or dangerous drugs on Company premises or reporting for duty under the influence of liquor, narcotics or dangerous drugs."  Major Offense #9 "may be considered cause for immediate discharge."  Exh. 2, pg. 89.

Costco's Drug and Alcohol-Free Workplace policy, a copy of which was signed by Plaintiff, states:  "I understand that...I will be subject to appropriate disciplinary action up to and including termination of employment...as determined by Costco if I refuse to cooperate in a drug and/or alcohol test, test positive for drugs and/or alcohol, or otherwise violate the policy."  Exh. 3, pg. 91.

At the time of Plaintiff's termination from Costco, all parties–Plaintiff, Bernardy, and Vice President Omoss–were over 50 years of age.  Pltf. 10:16-17; Bernardy Decl. for Costco ¶ 12.

On July 13, 2011, Plaintiff filed a grievance with Local 542 in an attempt to reinstate his employment with Costco.  Local 542 Exh. 1.  The case was assigned to Michael West, a Business Agent for Local 542.  West Decl. for Costco ¶ 1, 4. During the grievance process, Plaintiff requested that West interview six of Plaintiff's friends and coworkers, who he was confident could confirm that his behavior did not indicate intoxication on the morning of the forklift accident.  Local 542 Exh. 4; Pltf. 236:21-239:12[10].  West did not interview these witnesses, however, because he did not believe that the witnesses' opinions could override a positive alcohol test.  West Decl. for Local 542 ¶ 6.  Plaintiff also requested that West review the video footage of the forklift accident, which he felt could prove that he was not intoxicated.  Pltf. 354:14-19.[11]  However no such video exists, because there is no

---

[10]This citation can only be found in Exhibit 12, provided by Local 542.

[11]This citation can only be found in Exhibit 12, provided by Local 542.

video surveillance available in the area of the warehouse where the forklift accident occurred.  Bernardy Decl. for Local 542 ¶ 4.  In his meetings with West during the grievance process, Plaintiff never complained of the accuracy or reliability of his breathalyzer test results.  West Decl. for Local 542 ¶ 5.

On July 14, 2011, West drove to the U.S. HealthWorks facility in Kearny Mesa to investigate Plaintiff's grievance.  West Decl. for Local 542 ¶ 7.  West spoke with a gentleman named Ray, the Back Office Manager.  Local 542 Exh. 6.  Ray informed West that the breathalyzer is calibrated every morning, that it clears itself of residual alcohol after each test, and that there had been no issues with the breathalyzer so far.  West Decl. ¶ 7.  West also learned that Ms. Zimmerman was certified to operate the breathalyzer and that her trainings were current.  West Decl. for Local 542 ¶ 7.

From this investigation, West concluded that Costco's decision to send Plaintiff for drug and alcohol testing was justified under Article XXIV(f) of the CBA jointly agreed upon by Costco and Local 542.  West Decl. for Local 542 ¶ 11.  West also concluded that Costco was justified in terminating Plaintiff, based on the fact that he tested positive for alcohol.  West Decl. for Costco ¶ 6; Local 542 Exh. 1.  With Plaintiff's consent, West closed his grievance on August 9, 2011.  West Decl. for Local 542 ¶ 8; Local 542 Exh. 2.

After Plaintiff was terminated, he spoke to multiple doctors at various U.S. HealthWorks locations in an effort to collect information on the reliability and accuracy of breathalyzers.  One of these doctors was Nagi Ibrahim, M.D. who told Plaintiff that in order to breathe a 0.093, he "would have had to have drunk himself into a coma by midnight the night before."  Complaint ¶ 12.

Plaintiff also spoke to a doctor at the U.S. HealthWorks facility in Escondido, who told him that the breathalyzer is not a perfect measure of blood alcohol content

and has been known to mess up.  Pltf. 371:3-372:14.[12]  Another physician at the U.S. HealthWorks facility in Oceanside similarly provided Plaintiff with generalized information on breathalyzers, along with articles that appear to call into question the reliability and accuracy of the underlying methodology.  Pltf. 372:20-376:2;[13] Local 542 Exh. 7.

Plaintiff's first cause of action arises out of contract breaches allegedly committed by Defendants Local 542 and Costco.  Plaintiff first alleges that Local 542 breached its duty of fair representation to him as a union member, and second that Costco breached the CBA by wrongfully discharging him.  Complaint, ¶ 17, 18.

Plaintiff's second cause of action alleges that Costco discriminated against him based on age, in violation of the California Fair Employment and Housing Act, codified as California Government Code Section 12940 *et seq*.  Complaint ¶ 29, 31. Plaintiff did file charges for age discrimination with the California Department of Fair Employment and Housing and was issued notice of his right to sue, pursuant to California Government Code Section 12965(b).  Complaint ¶ 32.

Plaintiff's third cause of action alleges defamation by Costco, through its employee Craig Harbin, who is a maintenance worker.  Complaint ¶ 37, 38; Harbin Decl. for Costco ¶ 1.  Plaintiff's allegations of defamation relate to three separate remarks, all originating from Harbin.

The first instance of alleged defamation occurred moments after the forklift accident on July 10, when Harbin told Plaintiff that he saw him drop a pallet out of the top steel.  Plaintiff alleges this remark was made in the presence of Manager Martinez.  Pltf. 272:24-273:8.  Martinez, however, has no recollection of hearing Harbin make any such comment.  Martinez Decl. for Costco ¶ 6.  In addition, Harbin's declaration does not address whether he ever made this statement.

---

[12]This citation can only be found in Exhibit 12, provided by Local 542.

[13]This citation can only be found in Exhibit 12, provided by Local 542.

1    The second instance of alleged defamation occurred the day after the forklift

2    incident, when Harbin text-messaged Cheryl Hall–a Costco cashier and Shop

3    Steward for Local 542–that Plaintiff was "drunk and wobbling all over the place."[14]

4    Pltf. 275:8-23.  Plaintiff did not actually hear Harbin make the comment.  Pltf.

5    275:24-276:8.  The issuance of this statement is denied by both Harbin and Ms. Hall.

6    Harbin Decl. for Costco ¶ 3; Hall Decl. for Costco ¶ 4, 5.

7    The third instance of alleged defamation occurred several weeks after the

8    forklift accident, when Harbin told Plaintiff's hairdresser, Sandy–as well as Sandy's

9    brother--that he (Plaintiff) was "drunk at work, dropped the pallet out of the top

10   steel...had to run and chase the forklift down, turn the key off."  Pltf. 279:14-280:15.

11   In his declaration, Harbin denies making any statements to Plaintiff's hairdresser or

12   to her brother.  Harbin Decl. for Costco ¶ 4.

13   Defendants move for summary judgment as to all causes of action.  The Court

14   considers each in turn.

15   **II.    LEGAL STANDARDS**

16        ***A.    Summary Judgment Standard***

17   Summary judgment is appropriate when, reviewing the record as a whole,

18   there is no genuine issue of material fact, and the moving party is entitled to

19   judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477

20   U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

21   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

22   The moving party bears the initial burden of demonstrating to the Court the

23   absence of any genuine issue of material fact.  *Horphag Research Ltd. v. Garcia*,

24   475 F.3d 1029, 1035 (9th Cir. 2007).

25   _____

26   [14]Ms. Hall describes her role as "shop steward" in the following manner: "It is my role as Shop Steward to serve as a liaison between the [Costco] employees and Local 542, to advise [Costco]

27   employees on Union policy and the terms of the collective bargaining agreement between Costco and Local 542, and to defend the employees in their dealings with Costco.  In my capacity as Shop

28   Steward, I am required to keep informed on employee and work issues affecting the Local 542 members who work at the Carlsbad Costco warehouse."  Hall Decl. ¶ 2.

1    If the moving party meets its initial burden, the burden then shifts to the non-
2    moving party to present specific facts showing that there is a genuine issue of
3    material fact that can only be resolved at trial. *Anderson*, 477 U.S. at 250.

4    The court must view the evidence and all reasonable inferences in the light
5    most favorable to the nonmoving party. *Horphag,* 475 F.3d at 1035.  However, the
6    nonmoving party must do more than simply show that there is some "metaphysical
7    doubt" as to the material facts. *Matsushita*, 475 U.S. at 586.  Instead, the
8    nonmoving party must introduce significant probative evidence that supports the
9    complaint, in order to survive summary judgment. *Fazio v. City & County of San*
10   *Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1977), quoting *Anderson*, 477 U.S. at 249.

11   The ultimate question is therefore whether the evidence is so one-sided that
12   one party must prevail as a matter of law.  Only such a finding would support
13   summary judgment. *Anderson*, 477 U.S. at 251-2.

14   **B.     Unopposed Motions**

15   The Local Civil Rules for the Southern District of California permit a district
16   court to construe an opposing party's failure to file its opposition papers as consent
17   to the granting of summary judgment for the opposing party on its merits.  S.D. Cal.
18   Civil Local R. 7.1(f)(3)(c).[15]

19   The Ninth Circuit has qualified this rule, however, by holding that "a
20   nonmoving party's failure to comply with local rules does not excuse the moving
21   party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as
22   a matter of law." *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).
23   Summary judgment must therefore be decided on the merits, and it "must be denied

24

25   [15]The Court acknowledges the longstanding policy in the Ninth Circuit of construing *pro se*
26   pleadings liberally; however, even *pro se* plaintiffs are expected to follow procedural rules and to file
     their documents in a timely manner, or to ask for an extension if they are unable to do so. *Ghazali v.*
27   *Moran*, 46 F.3d 52, 54 (9th Cir. 1995).  Plaintiff had several months to file an opposition to the instant
     motion.  He has been notified properly on all filings relevant to this matter.  The Court therefore lacks
28   any basis to excuse Plaintiff's failure to defend against Defendants' pending motions for summary
     judgment.

on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

However, in deciding whether to grant summary judgment, the court will not undertake the task of formulating arguments on behalf of a plaintiff who has abdicated his responsibility to defend himself against Defendants' motions for summary judgment. A *pro se* litigant, like the plaintiff in the case at bar, must assume the responsibility of presenting his own legal theories and arguments; he cannot rely on the court to do so on his behalf. Thus, when a motion is unopposed as it is here, the Court will make its determination based solely on the facts, law, and arguments that have been presented to it.

Accordingly, this Court has reviewed Plaintiff's initial complaint, Defendants' memoranda in support of summary judgment, relevant provisions of the CBA, and the declarations of eight Costco and Local 542 employees with knowledge of the forklift accident at issue. As set forth in detail below, the Court finds that Defendants' motions have merit, and that Defendants Local 542 and Costco are entitled to summary judgment on all issues as a matter of law.

## III.   DISCUSSION

### A.   *Defendant Local 542's Motion for Summary Judgment*

#### 1.   The Duty of Fair Representation

Local 542 moves for summary judgment as to Plaintiff's claim of breach of the duty of fair representation. Plaintiff contends that Local 542 must pursue his grievance to arbitration in order to satisfy its duty of fair representation. Local 542, on the other hand, claims that Plaintiff's breathalyzer test results, which register above California's legal limit for intoxication, provide sufficient justification for its decision not to arbitrate his grievance, and that this decision is in compliance with the duty of fair representation.

The duty of fair representation derives from a union's statutory duty to

represent all members of the designated unit.  Specifically, the duty requires that the union and its agents serve "the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."  National Labor Relations Act, § 8(b) as amended 29 U.S.C.A. § 158(b); *Vaca v. Sipes*, 386 U.S. 171, 177 (1966), quoting *Humphrey v. Moore*, 375 U.S. 335, 342 (1964).

A breach of the union's statutory duty of fair representation occurs only when the union's conduct toward a member of the collective bargaining unit is "arbitrary, discriminatory, or in bad faith."  *Vaca*, 386 U.S. at 190.  This means that no individual employee is entitled to an absolute right to have his grievance taken to arbitration.  *Id.* at 195.  The dispositive question is only whether the union's conduct at all times has been nonarbitrary, nondiscriminatory, and in good faith.  *Id.* at 190.

In assessing a union's breach of the duty of fair representation, the court must first determine whether the act in question involved the union's judgment, or whether the act was procedural in nature.[16]  *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 636 (9th Cir. 1988).

Once the court determines whether the act is one of judgment or procedure, it must then examine whether the union's conduct was arbitrary, discriminatory, or in bad faith.  If the act in question involved the union's judgment, the plaintiff must demonstrate that the union's conduct was either discriminatory or made in bad faith; arbitrariness can imply a breach of the duty only if the act in question was procedural.  *Bechtel*, 840 F.2d at 636.

A union acts in "bad faith" if its actions constitute fraud, deceitful action, or dishonest conduct.  *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874, 880 (9th Cir. 2007).  On the other hand, a union's actions are

---

[16]Examples of "procedual" acts include providing adequate notice of upcoming meetings, and acknowledgment of time limits.  *Moore*, 840 F.2d 634, 637 (9th Cir. 1988).

"arbitrary" if they lack a rational basis or if the union fails to conduct a minimal investigation of the grievance that has been brought to its attention. *Stevens v. Moore Business Forms, Inc.*, 18 F.3d 1443, 1447 (9th Cir. 1994); *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985); *Tenorio v. Nat'l Labor Relations Bd.*, 680 F.2d 598, 601 (9th Cir. 1982).  In making the determination of whether a union's actions were arbitrary or made in bad faith, courts are inclined to defer to the union's stated reasons for its handling of the grievance procedure, regardless of whether that reasoning is faulty. *Peters v. Burlington N.R.R.*, 931 F.2d 534, 540 (9th Cir. 1990); *Peterson*, 771 F.2d at 1254.

Here, it is clear that the act in question–Local 542's decision not to pursue Plaintiff's grievance against Costco to arbitration–is an act involving judgment.  Prior to arriving at its decision to terminate Plaintiff's grievance, Local 542 engaged in an investigation of the personnel and machinery at U.S. HealthWorks; it reexamined Major Offense #9 of the CBA as well as Costco's Drug and Alcohol-Free Workplace policy; and it held multiple meetings with Plaintiff.  Such a series of discretionary decisions persuades this Court that Local 542's actions involved judgment, not procedure.

It is also clear that Local 542 has acted at all times nondiscriminatorily and in good faith.  Plaintiff does not allege any discriminatory behavior, fraud, deceitful action, or dishonest conduct against Local 542, and indeed, there is no evidence in the record that Local 542 engaged in any such conduct.  Local 542 has thus not acted in bad faith.

Plaintiff instead alleges what could amount to "arbitrary" conduct–that by failing to take all the investigative measures available at its disposal, including interviewing Plaintiff's coworkers and examining a videotape of the incident, Local 542 failed to conduct a minimal investigation of his grievance and cannot cite a rational basis for its decisions.

Upon closer examination, however, Local 542's conduct cannot be deemed

12-CV-0340

arbitrary, because the union–through its agent, Michael West–conducted more than a minimal investigation of the grievance, and its decision to terminate Plaintiff's grievance had a rational basis.  Although West did not act on Plaintiff's advice to interview his colleagues or to view the videotape of the incident in order to glean whether Plaintiff exhibited behaviors coincident with intoxication, West did conduct what he believed to be a more useful investigation.  He drove to the U.S. HealthWorks facility in Kearny Mesa and spoke with one of the managers on site. He found that the breathalyzer used to test Plaintiff was in complete functioning order, and that it had never before presented a problem.  He found that all routine calibration and clearing procedures had been followed, up to and during Plaintiff's tests.  Finally, West discovered that Ms. Zimmerman, who administered the breathalyzer, was certified to use the machine and was up-to-date on all her training at the time Plaintiff was tested.

Second, West's decision not to pursue the interviews or videotape was a rational one.  West stated that, in his opinion, the testimony of witnesses to Plaintiff's behavior would not override a positive alcohol test.  This is a rational justification for not interviewing witnesses, because (1) breathalyzer results are a quantitative measurement of blood alcohol content and are thus more reliable than the subjective, behavioral measure of intoxication that would be provided by witnesses, and (2) it is unknown whether the witnesses' testimony would be reliable, because Plaintiff selected those individuals based, in part, on the longstanding friendships they shared.  As for the videotape, West's reason for not examining it is that no such videotape exists.  This is most certainly a rational basis.

Furthermore, Local 542 has made clear that its stated reason for terminating Plaintiff's grievance is his violation of the terms of the CBA by committing Major Offense #9 and by testing 0.092 and 0.093 BAC on the morning of the forklift accident.  This reason was documented by the Grievance Report which was signed by both Plaintiff and West.  Local 542 Exh. 1.  A clear violation of the CBA

provides a rational basis for Local 542's decision not to further arbitrate Mr. Murphy's claims after he was terminated from Costco, and the Court must defer to the union's stated reasons for its handling of the grievance procedure.

As a result, Local 542's decisions were not arbitrary, and even if they were, Plaintiff cannot prevail as a matter of law because he has not made any showing of discriminatory conduct or bad faith on the part of Local 542, which is necessary to infer a breach of duty when the union's actions involve judgment.

Plaintiff appears to allege in his complaint that the results of the breathalyzer were inaccurate and unreliable.  Complaint, ¶ 10, 12.  However, Plaintiff never raised this issue at any time during the 3 ½ weeks over which West investigated the matter.  Further, West's investigation of the U.S. Healthworks facility in Kearny Mesa did not raise any concerns as to the breathalyzer's accuracy or reliability, or its operator's competence to administer the test.  The Court also notes that the methodology used in breathalyzers is well-known, unchallenged, and has been certified as accurate by the National Highway Traffic Safety Administration of the Department of Transportation for over 25 years.  *United States v. Brannon*, 146 F.3d 1194, 1196 (9th Cir. 1998).

Given that the strong weight of evidence supports Local 542's contention that its decision not to pursue Plaintiff's grievance was rooted in rational bases following an investigation, and that Plaintiff has not provided any evidence to the contrary, the Court **GRANTS** summary judgment in Local 542's favor as to this claim.

### B. *Defendant Costco's Motion for Summary Judgment*

#### 1. Breach of the Collective Bargaining Agreement ("CBA")

Plaintiff next alleges that Costco terminated his employment without "sufficient and proper cause," as set forth in Article IV of the CBA.  Complaint ¶ 17. Costco disagrees, and cites three separate contract provisions in support of its position: (1) Article XXVI section (f) of the CBA, (2) Major Offense #9 of the CBA, and (3) Costco's Drug and Alcohol-Free Workplace policy.

Article XXVI section (f) allows Costco to send its employees for drug and alcohol testing in the event of a serious forklift accident or an accident which causes injury or damage to individuals, property, or equipment.  The Court agrees with Costco's interpretation of the provision as imposing disjunctive, not conjunctive, conditions.  In other words, either a serious forklift accident or an accident which causes injury or damage to personnel or equipment will merit a drug and alcohol test.  The absence of damage to personnel or equipment does not nullify Costco's choice to send its employee for drug and alcohol testing.

Thus, while no personnel or equipment were damaged pursuant to Plaintiff's forklift incident, it is undisputed that multiple managers (Darryl Wilson, Ivan Martinez, and Charles Bernardy) considered the accident to be a "serious forklift accident."  It is also undisputed that Costco has consistently interpreted Article XXVI section (f) by sending employees for testing under similar circumstances.  Because the incident was deemed a "serious forklift accident" after investigation by management at the scene, and because Article XXVI(f) allows Costco to send its employees for a drug and alcohol test following a "serious forklift accident," Costco acted within its authority when it subjected Plaintiff to a drug and alcohol test.

Major Offense #9 of the CBA explicitly states that an employee who reports for duty under the influence of liquor creates cause for immediate discharge.  It is undisputed that Plaintiff tested above the legal limit for blood alcohol content in two separate breathalyzer readings, and that West's investigation of the breathalyzer at the U.S. HealthWorks facility suggests that the machine was functioning properly on the day of Plaintiff's tests.  Plaintiff's breathalyzer results are, therefore, conclusive evidence that he reported for duty on the morning of July 10, 2011 while under the influence of liquor.  It follows that Costco, in adhering to the "Major Offenses" section of the CBA, also acted within its authority when it terminated Plaintiff.

Finally, Costco's Drug and Alcohol-Free Workplace policy entitles Costco to subject its employees to alcohol and drug screening as a condition of continued

employment.  The policy also states that the employee may be terminated for testing positive for drugs and/or alcohol.  As discussed above, since Plaintiff's breathalyzer tests show that he tested positive for alcohol, and since Plaintiff has not presented any persuasive or specific evidence to dispute the accuracy or reliability of breathalyzer tests, the Court **GRANTS** summary judgment in favor of Costco with respect to Plaintiff's breach of contract claim.

### 2.   Age Discrimination Claims

Plaintiff alleges that Costco discriminated against him based on his age in violation of the California Fair Employment and Housing Act ("FEHA"), otherwise known as California Government Code Section 12940, *et seq*.  Adjudication of an age discrimination claim must follow the *McDonnell Douglas* framework established by the Supreme Court.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The plaintiff alleging discrimination initially bears the burden of proving a prima facie case of discrimination, which in effect creates a presumption that the defendant unlawfully discriminated against the plaintiff.  *Id.* at 802.  If the plaintiff succeeds in proving his prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the allegedly discriminatory treatment.  *Id.* at 802-3.  Should the defendant satisfy this burden, the plaintiff must then prove that the legitimate reasons offered by the defendant were not his true reasons, but were rather a pretext for discrimination.  *Id.* at 804; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To establish a prima facie case of discrimination, the plaintiff must show: (1) that he is a member of a protected class; (2) that he was qualified for his position and was performing his job satisfactorily; (3) that he experienced an adverse employment action; and (4) that similarly situated individuals outside his protected class were treated more favorably, or that other circumstances give rise to an inference of discrimination.  *Hawn v. Executive Jet Mgmt.*, Inc., 615 F.3d 1151, 1156 (9th Cir. 2010).

1    The defendant's burden to rebut the plaintiff's prima facie case of

2    discrimination is satisfied by articulating a lawful reason for the action.  *Burdine*,

3    450 U.S. at 258; *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24,

4    25 (1978).

5    And finally, the plaintiff can demonstrate pretext by one of two ways: (1)

6    directly, by demonstrating that the defendant was more likely than not motivated by

7    discriminatory motive or intent, or (2) indirectly, by showing that the defendant's

8    proferred explanation is not creditable because it is either internally inconsistent or

9    generally not believable.  *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108,

10   1112-3 (9th Cir. 2011).

11   The Court notes that in the Ninth Circuit, summary judgment is used

12   prudently in age discrimination cases.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271,

13   1282 (9th Cir. 2000).  The Ninth Circuit Court of Appeals has explicitly stated, "We

14   require very little evidence to survive summary judgment in a discrimination case,

15   because the ultimate question is one that can only be resolved through a searching

16   inquiry–one that is most appropriately conducted by the factfinder, upon a full

17   record."  *Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1564 (9th Cir. 1994).  For the

18   following reasons, however, summary judgment is appropriate on this issue and in

19   this case as a matter of law, based on the facts and evidence before the Court.

20   Turning first to whether Plaintiff has established a prima facie case of age

21   discrimination, the Court finds that Plaintiff lacks at least one of the elements

22   necessary.  Plaintiff is indeed a member of the protected class of employees over 40

23   years old, and he has suffered an adverse employment action, in the form of

24   termination.  Cal. Gov't Code §§ 12926(b), 12940(a); *Earl*, 658 F.3d at 1112.

25   Plaintiff does not, however, present any evidence that similarly situated employees

26   outside his protected class–specifically, other employees who are under 40 years of

27   age and allegedly violated the same Costco policies–were treated any more

28   favorably than he was.  *See Earl*, 658 F.3d at 1113 ("A plaintiff may raise a triable

issue...through comparative evidence that the employer treated younger but otherwise similarly situated employees more favorably than the plaintiff"). There is also no evidence in the record to suggest that any other circumstances surrounding Plaintiff's termination give rise to an inference of discrimination. On the contrary, Costco cited a nondiscriminatory reason for its termination of Plaintiff, which rested specifically on his violation of Costco's Drug and Alcohol-Free Workplace policy and on Major Offense #9 of the CBA.

Plaintiff is therefore unable to establish a prima facie case of age discrimination against Costco. Accordingly, the Court need not reach the issues of whether Defendant has articulated a legitimate reason for terminating Plaintiff, or whether Plaintiff can demonstrate that Defendant's articulated reason is actually a pretext for discrimination.

The Court **GRANTS** Costco's motion for summary judgment on the issue of age discrimination.

### 3. Defamation Claims

The tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage. *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007).

The three allegedly defamatory remarks must be analyzed separately. The following discussion reveals why each set of remarks suffers from the absence of at least one of the elements required to establish actionable defamation.

Harbin's first remark to Plaintiff, wherein he stated that he saw Plaintiff drop a pallet out of the top steel, cannot be considered actionable defamation because, as Costco correctly points out, it was never "published." "Publication" necessarily requires that the defamatory matter be communicated, or "published," to one other than the person defamed. *Cabesuela v. Browning-Ferris Industries of California, Inc.*, 68 Cal.App.4th 101, 112 (1998). Since the remark was made exclusively to Plaintiff, and since Martinez–who was supposedly at the scene–did not hear Harbin

make the remark, it stands to reason that Harbin's statement to Plaintiff was never "published."  Thus, the first remark is not actionable defamation.

Defendant Costco argues that the common interest privilege protects Harbin's second set of remarks, which were made to Ms. Hall regarding Plaintiff's supposed drunk behavior while on duty and at work.  In order for this qualified privilege to apply, the communicator and the recipient must have a common interest, the communication must be made without malice, and the statements must be reasonably calculated to protect or further that common interest.  Cal. Civ. Code § 47(c); *Taus*, 40 Cal.4th at 721.  Costco argues that the common interest privilege protects all communications between all employees who share a common interest within an employment context.  In support of this contention, Costco cites *Deaile v. General Telephone Company of California*, 40 Cal.App.3d 841, 846 (1974).  However, Costco's interpretation of *Deaile* leads it to assert an overbroad interpretation of the common interest privilege, one that would eviscerate the restraint that normally accompanies evidentiary privileges.  *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972).  On the contrary, *Deaile* stands only for the proposition that communications made by the <u>employer</u>, or those authorized by the employer, can be protected by the common interest privilege if there is an articulable common interest, such as the preservation of employee morale and job efficiency.  *Deaile*, 40 Cal.App.3d at 846.

In the matter at bar, not only is the communicator not the employer or even an authorized agent of the employer, there is no conceivable common interest that could be furthered by Harbin's alleged communication to Ms. Hall.  Even considering that Ms. Hall is also a Shop Steward–an employee who is curiously employed by Costco but is charged with the task of representing Costco's employees against Costco–there is no obvious common interest that can be served by Harbin's remarks to Ms. Hall, much less one that even remotely approaches the common interest asserted in *Deaile*.  Costco argues that the common interest shared by Harbin and Ms. Hall is to enforce the CBA.  But it stretches the imagination to believe that

Harbin sought to further this interest when he made his remarks to Ms. Hall.  Harbin, at best, has a remote stake in whether the CBA is enforced by his superiors in a situation that he neither caused nor is likely to experience himself in the future. Costco's interpretation of the common interest is therefore so broad and attenuated that any communications between any employees of any company would be brought under the umbrella of privilege.

Despite the difficulties surrounding application of the common interest privilege, however, Plaintiff's second defamation claim must fail.  Since both Harbin and Ms. Hall deny that any such remark was ever made, no injury or damage is available to form the basis for an action of defamation, particularly in light of the fact that Ms. Hall does not appear to have played any part at all in Plaintiff's termination from Costco or even in his grievance with Local 542.

Costco asserts that Harbin's third remark, made to Plaintiff's hairdresser Sandy and her brother regarding Plaintiff's intoxicated behavior while at work, fails to create actionable defamation because it is inadmissible hearsay.  While it is undisputed that Plaintiff did not hear Harbin's remark himself, Pltf. 280:23-281:15, such a defamatory remark would not be offered into evidence to prove the truth of the matter asserted (that Plaintiff was in fact drunk at work, dropped a pallet, and had to chase down his forklift).  Instead, the comment would be offered into evidence to prove that the remark was made at all, by someone (Harbin) who had personal knowledge of the events of the forklift accident involving Plaintiff.  As such, Harbin's remarks to Sandy and her brother are not considered hearsay.

However, Plaintiff's defamation claim for this remark fails for the same reason as Harbin's remarks to Ms. Hall.  Harbin denied altogether making any such comment, and Plaintiff has not provided any evidence from Sandy or her brother that the alleged remarks were in fact made.  This set of remarks made by Harbin also came weeks after Plaintiff had already been terminated; thus, Harbin's remarks caused no actionable injury or damage to Plaintiff separate from what he had already

suffered.  In fact, Plaintiff admits that Harbin was likely not trying to harm him by making those remarks, and that Harbin did not harbor any ill will or hatred toward Plaintiff.  Pltf 281:16-282:6.

Furthermore, as Costco correctly asserts, the theory of *respondeat superior* does not apply in this context, because Harbin's remarks were made on his own personal time, several weeks after the forklift incident and well after Mr. Murphy's termination.  *Sunderland v. Lockheed Martin Aeronautical Systems Support Co.*, 130 Cal.App.4th 1, 12 (2005) (employee acted outside the scope of employment while he was running errands on his own time).  Consequently, although California's *respondeat superior* doctrine imposes a broad rule of liability on employers, *Rivera v. National Railroad Passenger Corp.*, 331 F.3d 1074, 1080-1 (9th Cir. 2003), Costco cannot be held liable for Harbin's remarks because they were made outside the scope of his employment.

The Court **GRANTS** Costco's motion for summary judgment on the issue of defamation.

**IV.   CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Defendants' motions for summary judgment in their entirety.  The Clerk of Court is instructed to enter judgment accordingly, and terminate this action.

**IT IS SO ORDERED.**

DATED:  June 17, 2013

Hon. Michael M. Anello
United States District Judge